IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| TONY LYNN LANDRY | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-15-170 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration | § | |

## OPINION AND ORDER

Before the Court, with the consent of the Parties, are the cross-Motions for Summary Judgment of Plaintiff, Tony Lynn Landry, and Defendant, Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration.

After consideration of the Motions and a review of the administrative record, the Court now issues this Opinion and Order.

On July 9, 2012, Plaintiff filed his application for disability benefits. Plaintiff was afforded a hearing before an Administrative Law Judge (ALJ) on September 17, 2013. At the hearing Plaintiff was represented by counsel. Following the hearing the ALJ issued an Opinion denying Plaintiff's application. The Appeals Council denied Plaintiff's request for review on May 6, 2015, thereby rendering the ALJ's Opinion the Commissioner's final decision. On July 8, 2015, Plaintiff filed this lawsuit.

The sole issue before the Court is whether the ALJ's decision is supported by substantial evidence. If it is, any belief by this Court that the decision is wrong is

irrelevant.  Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir. 1988) (The district court "may not re-weigh the evidence, nor try the issues *de novo*, nor substitute (its) judgment for that of the Secretary, even if the evidence preponderates against the Secretary's decision."); 42 U.S.C. § 405g (The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.)

At the time Plaintiff filed his application he was about to turn 52.  His application listed "Liver transplant list(,) hepatitis c(,) kidney cancer treatment(,) Renal Failure (and) Hep C."  At the time of the hearing before the ALJ he alleged disability "due to cirrhosis of the liver, Hepatitis C, renal cancer with resulting nephrectony, osteoporosis, hypertension, depression and anxiety."  According to Plaintiff, his conditions precluded him from being employed for any gainful work at all.

The ALJ considered Plaintiff's testimony in light of a review of his lengthy medical records and concluded that Plaintiff did not suffer from any physical or mental impairments sufficient to render him disabled under the Social Security Act and its regulations.  The ALJ, in interpreting the medical records, determined that the objective medical evidence required denial of Plaintiff's application.  He found that on January 26, 2012, Dr. Amin, Plaintiff's personal physician, found no significant functional limitations.  In April 2012, Dr. Holoye also found no significant functional limitations.  In May, Dr. Amin again found no significant functional limitations.  In October, Dr. Holoye did so again.  In November, Dr. Samaratunga reviewed Plaintiff's medical records and determined that Plaintiff's exertional limitations would not preclude Plaintiff from working and that his

2

allegations to the contrary were only partly credible. Then, on January 2013, Dr. Durfor affirmed Samaratunga's assessments. The ALJ echoed Dr. Samaratunga's opinion as to Plaintiff's credibility: "The claimant's statements concerning the intensity, persistence and limiting effects of (his) symptoms are not entirely credible." The ALJ specifically noted that

> (b)esides the lack of supporting objective evidence, the claimant's own admissions concerning his activities of daily living also do not comport with his subjective complaints. For example, he was able to perform household work, cook, drive, travel unaccompanied, and attend several studies groups a week. And there is no medical support that he required taking naps every two hours.

The ALJ, therefore, concluded that Plaintiff had a physical residual functional capacity to perform light work as required by jobs that, in the opinion of the testifying vocational expert, existed in significant numbers in the national and local economy.

Although not originally alleged in his application, Plaintiff raised the issue of mental impairments as a basis for seeking disability benefits. Perhaps the ALJ could have chosen to ignore this argument, Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995) (ALJ's duty to investigate does not extend to possible disabilities not alleged by Plaintiff or not clearly indicated in the record.), but he chose, instead, to consider it even though Plaintiff was never treated for mental problems. Cf. Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ can rely on lack of treatment in his decision to deny benefits on that basis.) Despite his lack of treatment, Plaintiff did have a consultive mental examination performed by Dr. Adams on September 24, 2012. Dr. Adams found, *inter alia*, that Plaintiff suffered

from only mild impairments and that his daily living activities were "roughly" within normal limits. Nevertheless, Dr. Adams concluded that Plaintiff experienced "significantly disruptive psychiatric symptoms." Dr. Adams's findings were reviewed by Dr. Boulos on November 9, 2012, who concluded Plaintiff had no severe mental impairment. After further review on January 16, 2012, Dr. Reedy affirmed Dr. Boulos's conclusion. The ALJ, in reliance on the subsequent reviews, found Dr. Adams's findings inconsistent with his conclusion and chose to disregard it. This was within the discretion of the ALJ. See, Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985) (If an opinion is conclusory or inconsistent with objective acceptable medical clinical diagnoses the ALJ may give the opinion little or no weight.); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994) (If an opinion is internally inconsistent, the ALJ can accord it less or no weight.) (citing, 20 C.F.R. § 404.1527(c)(2)). As a result, the ALJ found that Plaintiff was not suffering from any disabling mental impairments.

In his Motion, Plaintiff raises several challenges to the ALJ's Opinion. First, he claims that the ALJ's reliance on the testimony of the vocational expert to find Plaintiff capable of performing light work is "inaccurate or at least questionable." The Court rejects this argument as simply Plaintiff's different interpretation of the objective medical evidence. Plaintiff's interpretation cannot negate the findings of the ALJ that are supported by substantial evidence.

Second, Plaintiff faults the ALJ's hypotheticals for omitting any reference to the impairment, if any, caused by his osteoporosis. Plaintiff argues that an ALJ must

4

"incorporate reasonably all disabilities of the claimant" in his questions to a vocation expert, if his questions do not do so, his determination is not supported by substantial evidence. Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994). On May 9, 2013, a screening found a bone mass density decrease of 10.9 % at L1-L4, an indication of some osteoporosis. The bone mass density decreases in the femoral neck area, 9.4 % on the left and 7.3% on the right, were labeled normal. At the hearing before the ALJ Plaintiff testified that the osteoporosis caused pain, but there is no objective medical evidence that osteoporosis contributed to any functional impairment. Accordingly, the ALJ may reasonably have decided to omit any reference to any limitation caused by Plaintiff's mild osteoporosis. But, more importantly, Plaintiff's counsel did not object to the questions on this basis or correct the hypotheticals on cross-examination. As a result, Plaintiff waived his right to challenge the hypotheticals on review. Quintanilla v. Astrue, 619 F.Supp. 2d 306, 323-24 (S.D. Tex. 2008).

Next, Plaintiff complains that the vocational expert was not questioned about transferable skills from his past work and, therefore, the ALJ's determination does not negate that Plaintiff is disabled, as a matter of law, under Medical-Vocational Guidelines, Rule 201.14. This Court disagrees. The ALJ determined that Plaintiff had the maximum substantial work capacity to perform "light" work, therefore, Rule 202.14 was correctly

applied and the fact that Plaintiff had no transferable skills[1] was, as the ALJ found, immaterial. The applicable rule directed the finding of "not disabled."

Finally, Plaintiff argues that the ALJ's credibility decision was fatally flawed. According to Plaintiff, the ALJ mischaracterized or misconstrued the evidence regarding his symptoms and failed to consider his exemplary work history. At Step 5 the ALJ determined that Plaintiff's credibility became a "relevant" inquiry. After reviewing the records that ALJ offered the following summary

> In reaching a conclusion as to residual functional capacity, great weight is assigned to the opinions of the reviewing state agency consultants who opined that the claimant retained the functional capacity to perform a range of light work. (Exhibits 7F; 13F) These opinions are consistent with the above discussed evidence. There is no evidence of seriously debilitating physical defects, and diagnostic abnormalities did not progress. Moreover, as noted, the claimant engaged in fairly typical activities of daily living, and certainly activities that are consistent with the above finding
>
> In sum, the above residual functional capacity assessment is supported by statements and observations from treating and examining source, objective medical evidence of record, and the admissions and statements offered by the claimant. Moreover, the above finding reasonably accommodates the claimant's subjective complaints as supported by the record.

Plaintiff counters by pointing out numerous sporadic notations in the record that "are consistent" with his testimony. This Court concedes that the notations cited exist and do comport with Plaintiff's testimony. However, the Court's task is to determine if the ALJ's ultimate decision is supported by substantial evidence, not a preponderance of the evidence

---

[1] Contrary to Plaintiff's assertion, the vocational expert was asked, on cross-examination, about transferable skills and testified that Plaintiff had none.

or, certainly, not beyond a reasonable doubt. Despite Plaintiff's specific references, there is ample objective evidence to support the ALJ's credibility assessment. Moreover, as noted above, Dr. Samaratunga, after a review of Plaintiff's medical recordings, also concluded that Plaintiff's allegations describing his limitations were only partly credible.

As to Plaintiff's work history, it is obvious the ALJ at least considered it. But even assuming Plaintiff's work history were exemplary and his efforts to continue to work despite his limitations were laudable, the issue is whether the Plaintiff can still perform any available work. The ALJ found he could and there is substantial evidence to support that decision.

It is, therefore, **ORDERED** that the Motion for Summary Judgment (Instrument no. 16) of Defendant, Carolyn W. Colvin, is **GRANTED**, the Plaintiff's Motion for Summary Judgment (Instrument no. 14) is **DENIED** and this action is **DISMISSED**.

**DONE** at Galveston, Texas, this  27th  day of April, 2017.

John R. Froeschner
United States Magistrate Judge